## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KAMAL K. PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-0749 (RWR) |
| | ) | |
| YVONNE PHILLIPS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction to Compel Mandatory Necessary Medical Care [ECF No. 17], Defendants' Motion to Dismiss [ECF No. 67], Plaintiff's Motion for a Continuance Under Fed. R. Civ. P. 56(f) to Enable Plaintiff to Conduct Discovery Prior to Responding to the Defendants' Arguments Concerning the Discretionary Function Exemption In Its Motion to Dismiss [ECF No. 77], Plaintiff's Motion to Strike Scandalous and Impertinent Materials from Defendants' Motion to Dismiss [ECF No. 81] and Plaintiff's Motion for an Order for the Marshals Service to Effect Proper Service Upon the Defendants in Compliance with the Federal Rules [ECF No. 82]. For the reasons discussed below, Plaintiff's Motion for an Order for the Marshals Service to Effect Proper Service Upon the Defendants in Compliance with the Federal Rules [ECF No. 82] will be granted, all the other motions will be denied, and Count One of the complaint will be transferred to the United States District Court for the Northern District of Texas.

I.  BACKGROUND

Plaintiff, a federal prisoner, is serving his sentence in the custody of the Federal Bureau of Prisons ("BOP").  *See* Compl. ¶ 1.  He brings this action under the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. § 1346, against the United States and under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against three individuals: Harley Lappin, former Director of the BOP, Yvonne Phillips, former Medical Designator at the BOP's Office of Medical Designations and Transportation ("OMDT"), and Wendy Pomeroy, the Medical Designations official who allegedly is responsible for plaintiff's transfer from the Federal Medical Center in Butner, North Carolina ("FMC Butner"), to the Moshannon Valley Correctional Center ("MVCC") in Philipsburg, Pennsylvania, in 2008.  *See* Compl. ¶¶ 2-4.[1]

Plaintiff's causes of action arise from this transfer from FMC Butner, where he was receiving medical treatment and therapy, to MVCC, a facility that he says was not equipped to address his medical needs.  *See* Compl. at 2 (Introduction).  The complaint alleges negligence (Count One), retaliatory transfer (Count Two), deliberate indifference to serious medical needs in violation of the Eighth Amendment (Count Three), and emotional distress (Count Four).[2]  *See id.* ¶¶ 76-83.  He demands a declaratory judgment and injunctive relief against the BOP, and monetary damages against the United States.  *See* Compl. ¶¶ 5-6, 77, 85, 87.  In addition, he demands compensatory and punitive damages against the individual defendants in their

---

[1]     Pursuant to the March 29, 2011 Minute Order, Wendy Pomeroy was substituted for the "Jane Doe" defendant named in the complaint.

[2]     Count Five of the complaint is a demand for injunctive relief "requiring that the [BOP], Lappin, Phillips and [Pomeroy] or their authorized agent in the OMDT undo the . . . transfer . . . and commence a new transfer . . . so that he can receive" necessary medical care.  Compl. ¶ 85.

individual capacities, and declaratory and injunctive relief against them in their official capacities. *See id.* ¶¶ 2-4, 80, 81, 83, 85.

### A. Allegations of the Complaint

### 1. Plaintiff's Medical Conditions

### a. Herniated Disc

Plaintiff was diagnosed with a herniated disc in his neck for which cervical traction was prescribed, "to be followed by surgery if the traction was unsuccessful." *Id.* ¶ 12. He did not receive the prescribed treatment, however, and instead "was transferred repeatedly between various BOP facilities," none of which could "provide the prescribed course of treatment" or complete a course of treatment before plaintiff's next transfer.[3] *Id.* ¶ 13. "After years of such transfers and never fully completing the treatment," plaintiff allegedly has experienced "progressively worsening symptoms." *Id.*

The herniated discs in plaintiff's neck caused "atrophy, numbness, and loss of function." *Id.* ¶ 24. In August 2007, plaintiff underwent "surgery for disc replacement in his cervical spine," *id.*, yet he "continued to experience further symptoms pertaining to other discs after the surgery," *id.* ¶ 25, the cause of which was "multiple disc protrusions," *id.* Although a referral was made "for further orthopedic evaluation," plaintiff "was transferred before treatment" could commence. *Id.* The transfer also interrupted physical therapy, *id.* ¶ 27, and he ceased to receive painkillers in the form of Lidocaine patches to alleviate the "chronic and severe pain" he continued to experience after surgery. *Id.* ¶ 28.

---

[3]     For example, plaintiff has alleged that, "[b]efore his physical therapy began, BOP officials transferred [him] to a different prison, which did not have a cervical traction device. Later, while awaiting an MRI and an appointment with a specialist at Federal Corrections Institution . . . El Reno, BOP officials again transferred [plaintiff], this time to Federal Transfer Center . . . Oklahoma City." *Patel v. United States*, 398 F. App'x 22, 25 (5th Cir. 2010).

### b.  Ruptured Biceps Tendon

Plaintiff ruptured his biceps tendon "[i]n 2001, while incarcerated at FTC Oklahoma City."  *Patel v. United States*, 398 F. App'x 22, 25 (5th Cir. 2010); *see* Compl. ¶ 21.  An orthopedic surgeon deemed it a "chronic rupture," and "recommended an MRI to determine whether the rupture could be repaired surgically."  Compl. ¶ 21.  The MRI "confirmed the rupture," *id.*, but further treatment was postponed "for reasons not relevant here," *id.* ¶ 22, and "the prison doctor" turned his attention to plaintiff's "neck problems" instead, after which he was to "make a referral to [the orthopedic surgeon] for the biceps tendon."  *Id.*  Plaintiff was transferred before the referral could be made.[4]  *Id.* ¶ 23.  Because of the transfer, the surgery allegedly "was delayed to the point where it was no longer possible to repair the ruptured tendon."  *Patel*, 398 F. App'x at 25.

### c.  Ankle Ossicles and Bone Spurs

Plaintiff "underwent surgery for ankle ossicles and bone spurs," and after the procedure he experienced "complications resulting in the formation of a nerve mass" which in turn caused "numbness in the foot."  Compl. ¶ 26.  Treatment in the form of cortisone injections into the ankle nerve was unsuccessful.  *Id.*  Plaintiff was transferred before "scheduled . . . further evaluation and treatment" took place.  *Id.*

### 2.  Plaintiff's 2005 Lawsuit

According to plaintiff, his repeated transfers "between various BOP facilities [and] placement at prisons which could not provide the prescribed course of treatment" meant that he "never fully complet[ed] the treatment" he needed.  *Id.* ¶ 13.  He filed a lawsuit in the United

---

[4]       According to plaintiff, "an orthopedic surgeon . . . recommended that [plaintiff] receive an MRI followed by surgery within sixty days of the date of the rupture.  Three days after this recommendation, BOP officials transferred [plaintiff] from FTC Oklahoma City to FCI Bastrop." *Patel*, 398 F. App'x at 25.

States District Court for the Northern District of Texas "seeking court intervention." *Id.*; *see*

*Patel v. United States*, No. 05-CV-083-A (N.D. Tex. filed Feb. 7, 2005).  Following the court's

ruling on non-dispositive motions filed by plaintiff, *see Patel v. United States*, No. 05-CV-083,

2006 WL 453241 (N.D. Tex. Feb. 24, 2006), plaintiff was transferred from the Federal

Correctional Institution in Forrest City, Arkansas, to FMC Butner.[5]  Compl. ¶ 18.

### 3.  Treatment at FMC Butner and Transfer to MVCC

Treatment for plaintiff's multiple medical conditions began in August 2006 upon his

arrival at FMC Butner.  *Id.* ¶ 20.  The treatment included:

> (a)     Treatment and referrals to a specialist for multiple
> herniated discs and neuromuscular symptoms including numbness
> other than that for which he had surgery;
> (b)     Treatment for the nerve mass and numbness arising from
> ankle surgery complications;
> (c)     Deferred treatment for the ruptured biceps tendon pending
> the completion of the neck problems;
> (d)     Physical therapy; and
> (e)     Chronic pain treatment with Lidocaine patches.

*Id.* ¶ 30.  Treatment ceased, however, upon plaintiff's transfer from FMC Butner to MVCC upon

the conclusion of a disciplinary matter, *see id.* ¶ 29, which has been described as follows:

> In 2008, while incarcerated at the [FMC] Butner . . . , [plaintiff]
> was charged with possessing a cell phone in violation of [BOP]
> Prohibited Acts Code 108.   Code 108 prohibits inmates from
> possessing, manufacturing, or introducing a "hazardous tool,"
> which is defined as "[t]ools most likely to be used in an escape or
> escape attempt or to serve as weapons capable of doing serious
> bodily harm to others; or those hazardous to institutional security

---

[5]      In the interim, it appears that plaintiff was transferred from FCI Bastrop to FCI
Beaumont, "where specialists diagnosed [him] with a compressed nerve in his spine and
recommended an epidural injection.  Prior to the epidural, [plaintiff] was transferred to FCI Big
Spring."  *Patel*, 398 F. App'x at 25.  While incarcerated at FCI Big Spring, plaintiff "cooperated
with the Department of Justice's Office of Inspector General ('OIG') as the OIG conducted
investigations into BOP violations of the USA PATRIOT Act"  *Id.*  OIG deemed plaintiff's next
transfer to FCI Forrest City to have been effected "in retaliation for [plaintiff's] participation in
the OIG's investigation." *Id.*

> or personal safety; e.g., hack-saw blade." 28 C.F.R. § 541.13 tbl.
> 3. After holding an administrative hearing, the Disciplinary
> Hearing Officer . . . issued a decision finding [plaintiff] guilty of a
> Code 108 violation and imposing sanctions that included the loss
> of 40 days of good conduct time.

*Patel v. Zenk*, 447 F. App'x 337, 339 (3d Cir. 2011). Plaintiff lost telephone privileges as well, but he "did not receive a sanction of a disciplinary transfer." Compl. ¶ 29.

MVCC was not equipped "to provide [plaintiff] with the medical treatment he was receiving at FMC Butner." *Id.* ¶ 31. Lidocaine patches were not permitted, and plaintiff "could not receive the prescribed course of treatment for his severe chronic pain." *Id.* ¶ 32. The facility lacked a physical therapy department "and physical therapy stopped." *Id.* ¶ 33. Notwithstanding plaintiff's need for medical specialists, he was informed that all referrals must be approved by a committee, and "since MVCC was a private prison which watched all its costs, any referrals . . . would probably not be approved." *Id.* ¶ 34. "Plaintiff was not provided any further treatment for the herniated discs, the ruptured biceps tendon, [or] the nerve mass in the ankle" while incarcerated at MVCC. *Id.*

According to plaintiff, BOP regulations allow for the transfer of a prisoner from his parent facility to another facility where medical treatment can be provided, for a subsequent transfer to a facility for additional treatment, and for the return of that inmate to his parent facility when treatment is complete. *See id.* ¶¶ 36-38. Plaintiff states that he has been classified as a CARE level 3 prisoner since 2003. *Id.* ¶ 41. Plaintiff alleges that he wrote letters to Lappin and Phillips when he learned of his impending transfer from FMC Butner. *Id.* ¶ 35. He asserts that each of these defendants "knew or reasonably should have known that [p]laintiff was undergoing specialized medical procedures at FMC Butner which could not be provided"

elsewhere, *id.* ¶ 39, yet effected his transfer to MVCC even though it is not a CARE level 3 facility, *id.* ¶ 43; *see id.* ¶ 38.

"Upon information and belief, . . . officials at MVCC . . . asked that [plaintiff] be re-transferred to a prison facility where . . . treatment and care could be provided," and Ms. Phillips or Ms. Pomeroy or both denied the request. *Id.* ¶ 36. BOP allegedly did not follow its own regulations in order "to interfere with and discontinue the course of treatment [plaintiff] was receiving," and allowed the transfer at the request of the "BOP officials in Texas who were involved in" the lawsuit he filed in the Northern District of Texas in 2005. *Id.* ¶ 40. According to plaintiff, "personal animus" on the part of Lappin, Phillips and Pomeroy against plaintiff stemming from that lawsuit, *id.* ¶ 44, prompted his transfer from FMC Butner to MVCC. These defendants allegedly saw the disciplinary violation "as an opportunity to punish [plaintiff] and retaliate against him" for having filed the lawsuit, "intending that such transfer would interfere with, delay, and discontinue [his] medical treatment." *Id.* ¶ 45.

### 4. Plaintiff's Administrative Tort Claims

In November 2008, plaintiff submitted three administrative claims to the BOP under the FTCA. The first alleged that "medical records and other documents were falsified and/or altered," and that, "to effectuate the transfer, the [BOP's] own internal program statements were not followed." *Id.*, Ex. 2, Attach. 1 (Claim for Damage, Injury or Death from plaintiff to BOP's Regional Director dated November 4, 2008). The second alleged "negligence and medical malpractice" with respect to treatment that was recommended but not provided following surgery on October 22, 2007, on plaintiff's herniated disc. *Id.*, Ex. 2, Attach. 2 (Claim for Damage, Injury or Death from plaintiff to BOP's Regional Director dated November 16, 2008) at 1. The third pertained to defendants' alleged "negligent transfer decision" and the impact of plaintiff's

transfer to MVCC and the resulting interruption in medical treatment.  *Id.*, Ex. 2, Attach. 3

(Claim for Damage, Injury or Death from plaintiff to BOP's Regional Director dated November

16, 2008) at 2.  BOP denied all three claims initially, *id.*, Ex. 2, Attach. 4 (Letter to plaintiff from

Michelle Fuseyamore, Regional Counsel, Mid-Atlantic Region, BOP, dated May 21, 2009), and

on reconsideration, *see* Mem. Brief in Supp. of Pl.'s Reply to Defs.' Mot. to Dismiss and Opp'n

to Request for Prelim. Inj. ("Pl.'s Opp'n") [ECF No. 79] Ex. 1 (Letter to plaintiff from M.T.

Fuseyamore dated December 22, 2009).

### B.  *Plaintiff's Representations in his Motion for Preliminary Injunction*

Plaintiff's motion for injunctive relief is "limited to the most serious of the medical

conditions" which he alleges are "causing him permanent harms."  Mem. Brief in Supp. of Pl.'s

Mot. for a Prelim. Inj. to Compel Mandatory Necessary Medical Care [ECF No. 17] ("Pl.'s PI

Mot.") at 2.  He refers to his "severe neck injury which is paralyzing his entire left shoulder and

arm," and he requests "an injunction to treat this neck condition."  *Id.*  In the opinion of

plaintiff's brother, Atul Patel, M.D., plaintiff is experiencing "atrophy . . . in his left shoulder

area," a condition which "needs to be evaluated by a neurologist or neurosurgeon" in order that

"appropriate treatment  . . . be provided."  *Id.*, Ex. 2 (Patel Aff. dated September 18, 2010) ¶ 3.

Dr. Patel's opinion, plaintiff submits, is "supported by the opinions of the prison doctors

themselves."  *Id.* at 4; *see id.*, Ex. 1 (Radiologic Report dated April 18, 2008; Results of MRI of

the shoulder dated March 30, 2009; Progress Notes dated December 9, 2009).  Plaintiff was to

have seen a neurosurgeon in August 2010, *id.* at 4, but as of the filing of his motion on

September 24, 2010, he had not yet been evaluated, *id.* at 5.  According to plaintiff, his condition

has "gotten progressively worse," *id.*, Ex. 1 (Patel Aff.) ¶ 7, and has caused him to experience

constant pain, reduced mobility, and loss of function of his left shoulder and arm.  *See id.*, Ex. 1

(Patel Aff.) ¶ 6; *see also* Pl.'s Supp. Ex. to Supp. his Request for Inj. Relief and Evidence of

Emergency Situation [ECF No. 57].  He requests injunctive relief "to compel Medically

Mandatory Treatment."  Pl.'s PI Mot. at 1.

     Defendants submit the declaration of Richard Matuszczak, the Health Services

Administrator of the Big Spring Correctional Center in Big Spring, Texas where plaintiff

currently is incarcerated.  Mr. Matuszcak makes the following representations:

> On January 27, 2011, the plaintiff was evaluated by Dr. Abdul Kadir, M.D.  Dr. Kadir recommended that the plaintiff receive an evaluation from a neurosurgeon . . . .
>
> The plaintiff's referral to see a neurosurgeon was approved, and on April 27, 2011, the plaintiff was evaluated by Dr. Hawkins, a neurosurgeon at the Shannon Clinic [in] San Angelo, Texas.  Dr. Hawkins recommended the plaintiff receive a myelography, and pending the results of the myelography, possibly surgery.  Dr. Hawkins did not recommend surgery without first receiving the results of the myelography.
>
> On May 3, 2011, the plaintiff received a second evaluation from Dr. Thomas Meeks, a neurosurgeon, whose business office is located [in] Odessa, Texas . . . .  Dr. Meeks confirmed Dr. Hawkins['] recommendation . . . .
>
> [T]he referral for . . . the . . . myelography was . . . approved . . . , and [p]laintiff's myelography appointment [was] scheduled for June 1, 2011 in San Angelo, Texas.

Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss and Opp'n to Pl.'s Mot. for Prelim. Inj.,

ECF No. 17 ("Defs.' Mem."), Matuszczak Decl.  ¶¶ 6-9.  The "myelogram performed in June of

2011 show[ed] evidence of severe compression of the transiting C5 nerve root . . . on the left

consistent with [plaintiff's] symptoms."  Pl.'s Opp'n, Ex. 2 (Neurosurgery Consultation

Followup dated September 16, 2011) at 2.  Dr. Hawkins recommended "surgery to include

anterior cervical discectomy and fusion."  *Id.*

## II.  DISCUSSION

Defendants move to dismiss plaintiff's complaint under Rule 12 of the Federal Rules of Civil Procedure for lack of personal jurisdiction, improper venue, insufficient service of process, and for failure to state a claim upon which relief can be granted.[6]  *See* Defs.' Mem. at 1.

### A.  Res Judicata

Generally, a plaintiff is expected to "present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence."  *U.S. Indus., Inc. v. Blake Constr. Co., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (citation omitted).  Res judicata (claim preclusion) bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."  *Porter v. Shah*, 606 F.3d 809, 813-14 (D.C. Cir. 2010) (citations and internal quotation marks omitted).  Essentially, the doctrine "prevents a party from filing a new civil action which is based on the same operative facts as underlay a previously-litigated civil action."  *Morton v. Locke*, 387 F. App'x 1, 1 (D.C. Cir. 2010) (per curiam) (citations omitted); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).  Additionally, that party is prevented from relitigating in a separate proceeding "any ground for relief which [he] already [has] had an opportunity to litigate[,] even if [he] chose not to exploit that opportunity," and regardless of the soundness of the earlier judgment. *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *I.A.M. Nat'l Pension Fund v.*

---

[6]      Defendants also move to dismiss for lack of subject matter jurisdiction, arguing that the doctrine of sovereign immunity bars plaintiff's claims for monetary damages against the BOP and the individual defendants in their official capacities. *See* Defs.' Mem. at 12-14.  Plaintiff demands only injunctive and declaratory relief -- but not monetary damages -- as against BOP and the individual defendants in their official capacities.  Compl. ¶¶ 2-5; Pl.'s Opp'n at 7.  The request to dismiss for lack of subject matter jurisdiction will be denied.

*Indus. Gear Mfg.Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously") (citation omitted).

"Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (citing *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)).  In determining whether two cases share a nucleus of facts, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (citations and internal quotation marks omitted).

Defendants move to dismiss plaintiff's FTCA and *Bivens* claims on the ground that they are barred under the doctrine of res judicata.  *See generally* Defs.' Mem. at 8-12.  Defendants assert that plaintiff "is realleging claims that were previously raised, involving the same parties as those named here or their privies that were adjudicated by courts of competent jurisdiction," *id.* at 10, specifically district court decisions affirmed by the Fifth and Tenth Circuits, *id.* at 11.[7] The cases on which defendants rely, however, erect no bar to the claims raised in this action.  As plaintiff notes, these cases "involved different parties and different factual circumstances which occurred years before the events from which this suit arises," Pl.'s Statement of Undisputed Facts ¶ 5, as well as "regulations [that] were not in effect until 2006," Pl.'s Opp'n at 2, 5.

---

[7]    Plaintiff strongly objects, *see* Pl.'s Mot. to Strike Scandalous and Impertinent Materials from Defs.' Mot. to Dismiss at 1, to defendant's characterization of him as a "recreational litigant." Defs.' Mem. at 4.  Indeed, plaintiff has filed dozens of civil actions and appeals, *see generally* Defs.' Supp. to their Mot. to Recons. the Court's May 11, 2010 Order Granting Pl.'s Mot. for Leave to Proceed *In Forma Pauperis*, and Reply to Pl.'s Opp'n to Same [ECF No. 39], but his litigation activity has no bearing on the outcome of this case.  Thus, Plaintiff's Motion to Strike Scandalous and Impertinent Materials from Defendants' Motion to Dismiss [ECF No. 81] will be denied.

For example, defendants rely on the lawsuit to which plaintiff refers in his complaint, *see* Compl. ¶ 13, in the Northern District of Texas, *see Patel v. United States*, No. 05-cv-083 (N.D. Tex. filed Feb. 7, 2005).[8]  Plaintiff sued the United States under the FTCA, alleging that the BOP negligently transferred him from prison to prison, where none of the facilities was equipped to handle plaintiff's medical needs.  Because of his repeated transfers, plaintiff alleged that he "did not have the proper medical care and physical therapy for a documented cervical radiculopathy condition and that . . . he failed to receive the proper medical care for his condition, which caused him to suffer deterioration, nerve damage, physical pain, and mental anguish."  *Patel v. United States*, No. 4:08-CV-0680-Y, 2009 WL 636532, at *2 (N.D. Tex. Mar. 12, 2009), *aff'd*, 398 F. App'x 22 (5th Cir. 2010) (per curiam).  Plaintiff filed his administrative claim on June 23, 2004, and thus could recover damages "only for transfers which occurred between June 2002 and June 2004," in the two years preceding his claim.   *Patel*, 2009 WL 636532, at *2 n.11.[9]

Defendants also rely on a lawsuit filed under the FTCA pertaining to the treatment of plaintiff's ruptured biceps tendon.  *See Patel v. United States*, No. 08-1168, 2009 WL 1377530 (W.D. Okla. May 14, 2009), *aff'd*, 399 F. App'x 355 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 1795 (2011).  Plaintiff did not raise a negligent transfer claim in that action, however, and the

---

[8]     That case began in the United States District Court for the Northern District of Texas, and subsequently was transferred in 2006 to the Eastern District of Arkansas, then to the Eastern District of North Carolina in 2007, and finally was transferred back to the Northern District of Texas in 2008.  *See Patel*, 398 F. App'x at 26-27.

[9]     Insofar as plaintiff was challenging his transfer, the court found that he could "bring an action claiming that the BOP was negligent in reviewing the many factors and considerations inherent in making such placement," and that "[t]he discretionary-function exception [to the FTCA] is designed to prevent such second guessing of the BOP's discretionary transfer decisions."  *Patel,* 2009 WL 636532, at *4.  Accordingly, the court dismissed the action with prejudice for lack of subject matter jurisdiction, *id.*, and the Fifth Circuit affirmed.  *Patel*, 398 F. App'x at 25.

FTCA claim failed because plaintiff was unable to introduce expert testimony to support his negligence claims as was required under state law.  *See Patel*, 399 F. App'x at 359.

Defendants mentioned a third lawsuit, *see* Defs.' Mem. at 4, a medical malpractice claim filed in the United States District Court for the Eastern District of Texas.  *See Patel v. Baluyot*, No. 02-0603 (E.D. Tex. filed Sept. 9, 2002).  "On May 15, 2001, [plaintiff] injured his right biceps muscle playing basketball," and on the recommendation of an orthopedic surgeon, he underwent an MRI at Doctor's Hospital on January 17, 2002.  *Patel v. Baluyot*, 384 Fed. App'x 405, 406 (5th Cir. 2010) (per curiam).  Dr. Resty Baluyot read the MRI on that same date.  *Id.* The complaint alleged "Dr. Baluyot was negligent in interpreting the MRI and failing to correctly diagnose the injury to his biceps tendon, and that Doctor's Hospital was vicariously liable for Dr. Baluyot's diagnosis under the theory of respondeat superior."  *Id.*[10]

Plaintiff's prior lawsuits certainly raise claims regarding his many transfers and the alleged denial of medical treatment.  None of the prior cases pertains to the 2008 transfer from FMC Butner to MVCC, or BOP's alleged failure to follow regulations promulgated in 2006 with respect to the 2008 transfer, or the other matters addressed in the denials of the three administrative tort claims challenged here.  Accordingly, defendants' motion to dismiss on res judicata grounds will be denied.

### B.  Service of Process on the Individual Defendants

Defendants move to dismiss on the grounds that the individual defendants were not properly served and that this court lacks personal jurisdiction over them.  *See generally* Defs.' Mem. at 14-16.  They argue that "the record in this action does not establish proper personal

---

[10]     The district court granted defendants' motions for summary judgment on the ground that, under Texas law, plaintiff "could not create a material issue of fact as to whether his treatment fell below the necessary standard of care" without expert testimony, *Patel*, 384 F. App'x at 407, and the Fifth Circuit affirmed, *id.* at 409.

service upon any of the individually-named Federal Defendants," and, therefore, "any claim against them personally is subject to dismissal." *Id.* at 15-16.

The docket reflects that Lappin was served in his official capacity only [ECF No. 8], and that Pomeroy was served personally at BOP headquarters [ECF No. 50]. Notwithstanding the March 30, 2012 Order directing the Clerk of Court to issue a summons and cause service to be effected on Phillips, it does not appear that any action has been taken.

Plaintiff is proceeding *pro se* and *in forma pauperis*, and thus relies on the Clerk of the Court and the United States Marshals Service to effect service of process on his behalf. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3). Defendants' motion to dismiss for lack of personal jurisdiction and for improper service of process will be denied without prejudice. Plaintiff's Motion for an Order for the Marshals Service to Effect Proper Service Upon the Defendants in Compliance with the Federal Rules [ECF No. 82] will be granted.

### C. Venue

Defendants move to dismiss on the ground that venue in this district is improper. *See generally* Defs.' Mem. at 16-19.

#### 1. FTCA Claim Against the United States

A claim under the FTCA "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiff is incarcerated in Texas, and Texas is considered his place of residence. *See In re Pope*, 580 F.2d 620 (D.C. Cir. 1978). Because plaintiff "cannot be found in this judicial district,"Defs.' Mem. at 17, and because "there is no indication from [p]laintiff's complaint that any of the complained-of actions or omissions occurred in this district," *id.*, defendants contend that venue for the FTCA claim is not proper in this district. Plaintiff's tort claim against the United States

arises from "the [alleged] negligence of its officials in placing [him] in a prison which was not capable of providing him medically mandated treatment." Compl. ¶ 77 (Count One). According to plaintiff, "[t]he acts or omissions complained of . . . are alleged to have been undertaken by the defendants working at the BOP's Washington, D.C. office." Pl.'s Opp'n at 9. He points to the request by MVCC staff to transfer him back to FMC Butner, *see id.*, Ex. 19, and Ms. Pomeroy's rejection of that request by email presumably from her office at BOP headquarters, *see id.*, Ex. 20. Further, plaintiff contends that "BOP regulations . . . mandated that the decision here involving a medically designated inmate originate from the OMDT" in Washington. *Id.* at 9. For these reasons, plaintiff argues that venue in this district is proper.

"Under the prevailing interpretation of section 1402(b), venue is proper in the District of Columbia if sufficient activities giving rise to plaintiff's cause of action took place here." *Franz v. United States,* 591 F. Supp. 374, 378 (D.D.C. 1984). The location of BOP's headquarters office alone "cannot constitute a basis for concluding that venue is appropriate in this [d]istrict," *Bartel v. Fed. Aviation Admin.*, 617 F. Supp. 190, 199 (D.D.C. 1985), and the "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative" of the question of venue. *Shawnee Tribe v. United States,* 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002). Even if officials at BOP's headquarters office may have participated in or actually made the decision to transfer plaintiff from FMC Butner to MVCC, the effects of that decision did not occur in this district. *See Zakiya v. United States,* 267 F. Supp. 2d 47, 58 (D.D.C. 2003) (finding that, where prisoner plaintiff mounted "a specific attack on the implementation of [a BOP] policy to his particular situation, and as the actual implementation by the BOP officials occurred at the facilities where he was incarcerated and not in this district, venue is not appropriate" in the District of Columbia). When conduct "occurs in one district but

has intended effects elsewhere, the act 'occurs' in the jurisdiction where its effects are directed." *Reuber v. United States,* 750 F.2d 1039, 1047 (D.C. Cir. 1985), *rev'd on other grounds, Kauffman v. Anglo-Am. Sch. of Sofia,* 28 F.3d 1223 (D.C. Cir. 1994); *see Spotts v. United States*, 562 F. Supp. 2d 46, 53 (D.D.C. 2008) (rejecting argument for venue in this district that "while the alleged tortious conduct had its operative effect on inmates in USP Beaumont, the negligent acts or omissions that caused the inmates' injuries -- i.e., the decisions to keep them at USP Beaumont during Hurricane Rita and regarding their care after the hurricane -- occurred at the Central Office [in Washington, D.C.]"); *Davis v. Mukasey*, 669 F. Supp. 2d 45, 49 (D.D.C. 2009) (transferring FTCA claim to district where events giving rise to claim occurred, notwithstanding prisoner plaintiff's subsequent transfers to facilities in Pennsylvania and Kentucky).  Following this reasoning, venue in this district is not proper.  Plaintiff does not reside here, and at no time was plaintiff incarcerated in the District of Columbia.  Furthermore, the effects of defendants' alleged tortious act or omission fell upon plaintiff while he was incarcerated elsewhere.

Ordinarily, upon a showing that venue in this district is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Dismissal is not appropriate in the circumstances of this case, particularly because plaintiff is proceeding *pro se.  See James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009) (noting that "[c]ourts generally favor transfer over dismissal," and that "[t]his is especially true when the plaintiff files a complaint *pro se*").  "The District of Columbia Circuit favors transfer under § 1406(a) when procedural obstacles --such as lack of personal jurisdiction, improper venue and statute of limitations bars --

impede an expeditious and orderly adjudication . . . on the merits." *Coltrane v. Lappin*, 885 F.

Supp. 2d 228, 235 (D.D.C. 2012) (internal quotation marks and citations omitted).

Under 28 U.S.C. § 1404(a), the Court may transfer a civil action to any other district

where it might have been brought "[f]or the convenience of the parties and witnesses, in the

interest of justice." *Id.*; *see Sec. & Exch. Comm'n v. Page Airways, Inc.*, 464 F. Supp. 461, 463

(D.D.C. 1978). Defendants suggest that this case "would be most appropriately litigated in

Texas, where [p]laintiff is incarcerated[,] or in North Carolina or Pennsylvania where the subject

action(s) took place." Defs.' Mem. at 18 n.7; *see* Defs.' Reply at 8- 9. As a practical matter,

however, it appears that transfer to the Northern District of Texas is the better option.

Plaintiff surely could have brought his FTCA claim in the Northern District of Texas,

based upon his current place of incarceration in Big Spring, Texas. Based on plaintiff's

description of the nature and severity of his medical conditions, he presumably has ongoing

medical needs and now requires and will continue to require treatment for his various conditions.

*See, e.g.,* Pl.'s Statement of Undisputed Facts ¶ 37 (alleging that his "medical treatment

continues to be ignored or delayed at the present prison"). Notwithstanding plaintiff's

designation to a private facility housing inmates under contract with the BOP, *see* Pl.'s Opp'n at

9-10, he remains in BOP custody and his medical records and other records pertaining to his

transfer presumably have followed him to Texas. Accordingly, the Court will deny defendants'

motion to dismiss the FTCA claim for improper venue. Instead, the Court will transfer the

FTCA claim *sua sponte* to the United States District Court for the Northern District of Texas.

*See Starnes v. McGuire,* 512 F.2d 918, 930-31 (D.C. Cir. 1974); *Echevarria-de Pena v. United*

*States*, No. 11-1388, 2012 WL 2192429, at *2 (D.P.R. June 14, 2012) (transferring both FTCA

and *Bivens* claims to the district where events took place, notwithstanding plaintiff's residence in

Puerto Rico, both under § 1404(a) and in the interest of judicial economy); *Hines v. GEO Group, Inc.*, 544 F. Supp. 2d 39, 41 (D.D.C. 2008) (transferring action to district where plaintiff was incarcerated under § 1404(a)); *Metcalf v. Fed. Bureau of Prisons,* 530 F. Supp. 2d 131, 135 (D.D.C. 2008) (transferring civil action to district of prisoner plaintiff's incarceration under § 1404(a) because of the "likelihood that witnesses and relevant evidence are maintained [there] and [ ] the difficulty of transferring plaintiff for purposes of pursuing this litigation"); *see also Miller v. Toyota Motor Corp.*, 620 F. Supp. 2d 109, 117 (D.D.C. 2009) ("[C]ourts may transfer cases *sua sponte* under § 1404(a)."). All the remaining counts will remain pending in this Court.

2.  *Bivens* Claims Against the Individual Defendants

In a *Bivens* action, where federal government officials are sued in their individual capacities, venue is proper in the district where (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). Plaintiff states that "venue in this case is premised on 28 U.S.C. § 1391(b)(2)" because "the individual defendants all committed the constitutional violations while in the District of Columbia." Pl.'s Opp'n at 10-11.

Neither Lappin nor Phillips resides in the District of Columbia, *see* Defs.' Mem., Ex. A-B (declarations of Yvonne Phillips and Harley Lappin, respectively), and Pomeroy's residence is unknown. Defendants argue that, where "there is no evidence that [d]efendants reside in this [d]istrict and none of the events [giving rise to plaintiff's complaint] took place here," venue in this district is not proper under 28 U.S.C. § 1391(b). *Id.* at 18. Plaintiff counters that venue in this district is proper for the *Bivens* claims based on his allegations "that the individual defendants all committed the constitutional violations while in the District of Columbia." Pl.'s

18

Opp'n at 11.  However, he concedes that "venue may be proper either [in] North Carolina or Pennsylvania where plaintiff was when [these] unconstitutional acts were undertaken and directed at him," but he maintains that "the most logical and best venue remains this district."  *Id.*

"Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).  In this case, it does not appear that plaintiff has merely named high government officials as defendants for the sole purpose of establishing venue in the District of Columbia.  He claims that these defendants actively participated in the decision to effect his transfer from FMC Butner to MVCC in 2008, and he alleges their personal responsibility for his resulting injuries.  Notwithstanding plaintiff's acknowledgement that this case could have been brought elsewhere, this is not a case where the plaintiff attempts to "manufacture venue" in order to "bring a suit here that properly should be pursued elsewhere."  *Id.* at 256.

All defendants have responded to the complaint, and the individuals responded in both their official and individual capacities.  *See* Defs.' Mot. to Dismiss at 1.  Venue is proper in the district where "any defendant may be found if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(b)(3).  Pomeroy was found in this district and was personally served here, and venue therefore is proper under § 1391(b)(3).  The Court will deny defendants' motion to dismiss plaintiff's *Bivens* claims for improper venue.

### D. Timeliness of Plaintiff's FTCA Claims

Defendants move to dismiss plaintiff's FTCA claims as "time-barred because he did not file this action within six months of the administrative denial of his claim[s]."  Defs.' Mem. at 19.  The administrative claims were denied initially on May 21, 2009, and his complaint was

docketed on May 11, 2010, more than six months later.  *See id.*  However, plaintiff sought

reconsideration of the denial of his three administrative tort claims, and the request was denied

on December 22, 2009.  Pl.'s Opp'n at 11.  BOP informed him that, if he was not satisfied with

this determination, he could "file suit in the appropriate U.S. District Court not later than six

months after the date of mailing of this notification."  Pl.'s Opp'n, Ex. 1.  By the Court's

calculation, the six month limitation period expired on or about June 22, 2010.  The Clerk of

Court received plaintiff's complaint on April 26, 2010, and, therefore, his FTCA claim is timely

filed.[11]  Defendants' motion to dismiss plaintiff's FTCA claims as time-barred will be denied.

### E.  Personal Involvement of the Individual Defendants

The individual defendants move to dismiss the *Bivens* claims, *see generally* Defs.' Mem.

at 21-24, arguing that these claims are "based solely on [plaintiff's] erroneous belief that

[d]efendants who are former high-level BOP officials were involved in day-to-day transfers and

operations of the various remote facilities."  *Id.* at 21.  They further disclaim any "personal[]

liability for constitutional torts [committed by] employees they supervis[ed]."  *Id.*  Plaintiff does

not rely on a theory of respondeat superior, however, and instead alleges the personal

involvement of Mr. Lappin, Ms. Phillips and Ms. Pomeroy in effecting his transfer from FMC

Butner to MVCC, and in denying his request for a transfer from MVCC back to FMC Butner.

Compl. ¶¶ 35-36; *see also* Pl.'s Opp'n, Ex. 20 (email to Maria Dawson from Wendy Pomeroy

dated October 7, 2008 denying request for transfer).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face,'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[11]      The Clerk of Court received plaintiff's complaint and application to proceed *in forma pauperis* on April 26, 2010.  The Court approved the application on May 7, 2010, and the two documents were filed officially on the Court's electronic docket on May 11, 2010.

*Twombly*, 550 U.S. 544, 570 (2007)), and the complaint adequately alleges the personal involvement of these defendants.

### F.  Qualified Immunity

In light of the procedural posture of this case, defendant's motion to dismiss on the basis of qualified immunity, *see* Defs.' Mem. at 26-31, will be denied without prejudice.  So, too, will Plaintiff's Motion for a Continuance Under Fed. R. Civ. P. 56(f) to Enable Plaintiff to Conduct Discovery Prior to Responding to the Defendants' Arguments Concerning the Discretionary Function Exception in its Motion to Dismiss [ECF No. 77].  Although defendants note that another court has dismissed a previous FTCA claim under the discretionary function exception, *see* Defs.' Mem. at 21 n.8, they "have not posited such a defense in this case."  Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss and Opp'n to Pl.'s Mots., ECF Nos. 75, 77, 81, and 82 [ECF No. 92] at 12.  Furthermore, any discovery at this stage is premature.

### G.  Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted).  A plaintiff need not prevail on each of these four factors; rather, "the district court must balance the strengths of the requesting party's arguments in each of the four required areas."  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  He "has the burden to show that all four factors, taken together, weigh in favor of the injunction."  *Davis v. Pension Benefit Guarantee Corp.*, 571 F. 3d 1288, 1292 (D.C. Cir. 2009) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)); *see Diwan v. EMP Global*

*LLC,* 841 F. Supp. 2d 246, 249 (D.D.C. 2012).  A preliminary injunction is "an extraordinary

remedy that should be granted only when the party seeking the relief, by a clear showing, carries

the burden of persuasion."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting

*Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)) (internal quotation marks omitted);

*Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (noting that preliminary injunction "should not

be granted unless the movant, by a clear showing, carries the burden of persuasion" (citation,

internal quotation marks and emphasis omitted)).

      Plaintiff's motion for a preliminary injunction "is limited to [what plaintiff considers] the

most serious of the medical conditions which are presently causing him permanent harms," that

is, the "severe neck injury which is paralyzing his entire left shoulder and arm."  Pl.'s PI Mot. at

2.  He asks the Court to "issue a Preliminary Injunction requiring the [BOP] to transfer the

plaintiff to a Federal Medical Center or other prison where he can receive [an] appointment with

[a] neurosurgeon, have any tests or recommendations [the neurosurgeon] makes followed in a

timely manner, and be provided all recommended treatment."  *Id.* at 11.  The demand for a

mandatory injunction set forth in plaintiff's complaint is essentially the same: plaintiff "seeks an

injunction . . . requiring that the [BOP], Lappin, Phillips and [Pomeroy] or their authorized agent

in the OMDT undo the . . . illegal transfer . . . and commence a new transfer in compliance with

the BOP policies and regulations so that [plaintiff] can receive . . . medical care," Compl. ¶ 85,

not only for the neck injury and its consequences but also for his other medical conditions.  *See*

*id.*

      Defendants argue that the "motion [for a preliminary injunction] is moot and should be

denied because he is receiving on-going treatment for his neck."  Defs.' Mem. at 31.  Since the

filing of the motion for a preliminary injunction, plaintiff has been examined by two

neurosurgeons, both of whom recommended a myelography and, if the results so indicated, that plaintiff undergo surgery.  *See id.*, Ex. H (Matuszczak Decl.) ¶¶ 7-8.  The myelography took place in June 2011, yet, plaintiff submits, as of September 2011, he had not received further treatment.  *See* Pl.'s Opp'n, Ex. 23 (Neurosurgery Consultation Followup dated September 16, 2011) at 2.  Notwithstanding a neurosurgeon's "repeated recommendations for urgent care … without delay to avoid permanent damage and paralysis to the left arm[,]" and "surgery to include anterior cervical discectomy and fusion[,]" *id.*, plaintiff had not received the treatment. In light of plaintiff's ongoing need for treatment of the neck injury, defendants have not shown that plaintiff's request is moot.

Defendants argue in the alternative that a preliminary injunction is not warranted because plaintiff "cannot satisfy the arguments for this extraordinary and drastic measure."  Defs.' Mem. at 32.  According to defendants, plaintiff "is not likely to succeed on the merits in this action, . . . and the public interest is not served by issuing the injunction . . . ."  *Id.*  They contend that plaintiff is unlikely to succeed on the merits of his "fundamentally flawed" claims.  *Id.* "[A]mongst several defects, [the] FTCA claims are untimely and/or barred by res judicata[,]" and the *Bivens* claims "are similarly infirm" given that the individual defendants "are protected by qualified immunity."  *Id.*

While plaintiff makes a colorable showing of the likelihood of irreparable harm, Lappin, Phillips and Pomeroy raise substantial arguments with respect to personal jurisdiction and qualified immunity, although these matters are not resolved at this time.  With the balancing of the equities and the public interest tipping neither way, plaintiff's motion will be denied because he does not demonstrate that he is likely to succeed on the merits of his *Bivens* claims.  The

Court can consider at a later date the complaint's requested relief of a mandatory injunction, *see*

Compl. ¶ 85, if plaintiff ultimately prevails on the merits of the *Bivens* claims.

III.  CONCLUSION

Plaintiff's FTCA claim (Count One) will be transferred to the United States District

Court for the Northern District of Texas, Plaintiff's Motion for an Order for the Marshals Service

to Effect Proper Service Upon the Defendants in Compliance with the Federal Rules [ECF No.

82] will be granted, and all the other motions will be denied.  An Order accompanies this

Memorandum Opinion.

Signed this 28th day of March, 2013.


/s/
RICHARD W. ROBERTS
United States District Judge